David DUVALL, Appellant,

v.

Helen LAWRENCE, et al., Respondents.

No. ED 79905.

Missouri Court of Appeals, Eastern District, Division Four.

July 16, 2002.

David Duvall, Columbia, pro se.

C.E. "Sketch" Rendlen III, Hannibal, MO, for respondent.

Before SHERRI B. SULLIVAN, P.J., LAWRENCE G. CRAHAN, J., and LAWRENCE E. MOONEY, J.

PER CURIAM.

David Duvall ("Plaintiff") appeals the judgment dismissing his petition against Helen Lawrence ("Lawrence"), James Maxey ("Maxey"), Gary Tawney ("Tawney"), and Michael Wilson ("Wilson"). We affirm in part, and reverse and remand in part.[1]

■ In reviewing the court's grant of a motion to dismiss, we accept all properly pleaded facts as true, give them a liberal construction, and draw all reasonable inferences which are fairly deducible from the pleaded facts. *Arnold v. American Family Mutual Insurance Co.*, 987 S.W.2d 537, 539 (Mo.App.1999). Because the court did not state a basis for its dismissal, we presume that dismissal was based on the grounds stated in each motion to dismiss and will affirm if dismissal was appropriate on any ground supported by the motions. *Id.*

The facts viewed in a light most favorable to the petition are as follows: Plaintiff is the founder and a current member of Society Against Governmental Abuse, a political organization created to seek out governmental abuses and disclose them to the public. In August 2000, Plaintiff filed a civil rights complaint against Wilson, a state prosecutor, and Tawney, Sheriff of Monroe County, in the Federal District Court for the Eastern District of Missouri

---

1. Plaintiff's motion to strike Wilson and Tawney's brief because it is argumentative and incomplete, and because of technical deficiencies is denied. Wilson and Tawney's motion to amend the legal file to include a judgment rendered in a criminal case concerning Plaintiff's brother is denied in light of our limited scope of review of a motion to dismiss.

("federal lawsuit"). One month later, allegedly in retaliation for Plaintiff's federal lawsuit and his political activities, Wilson met with Lawrence and Maxey and instructed them to obtain an ex parte order of protection against Plaintiff because he was allegedly "stalking" two children, F.J. and J.T.M. (collectively "the children").[2] At the time Lawrence and Maxey filed their petitions for orders of protection, Wilson knew that they did not have custody of the children and that the allegations against Plaintiff were materially false.

After Lawrence and Maxey filed their petitions, Plaintiff delivered a subpoena to Tawney to serve on Lawrence for the purpose of obtaining Lawrence's deposition on September 26, 2000 in a separate case filed in Randolph County ("Randolph County lawsuit"). Allegedly in retaliation for Plaintiff's federal lawsuit, Tawney refused to provide service or engaged in activities to prevent service of process upon Lawrence. Lawrence did not attend the September 26 deposition, and bragged to three different individuals that the sheriff's department did not want to serve her with Plaintiff's subpoena. Plaintiff spent over $40 attempting to depose Lawrence.

Two days later, the circuit judge presiding over the ex parte orders held an initial hearing on the orders. Plaintiff could not attend because the hearing conflicted with "other civil litigation," wherein Plaintiff was seeking a contempt citation against Lawrence for failing to appear for a deposition. Lawrence and Maxey subsequently dismissed their petitions for orders of protection. Plaintiff incurred over $420 in expenses because of the ex parte litigation.

Some time between September 28 and October 18, 2000, Tawney and Wilson knowingly allowed Lawrence to drive a stolen car, granting her what Plaintiff describes as "de facto carte blanche immunity to any crimes committed in Monroe County." On October 18, 2000, Plaintiff was on the ground floor of the Monroe County courthouse. Lawrence and the children were on the upper floor. At this time, Lawrence had custody or supervision over the children. Upon seeing Plaintiff, Lawrence directed the children to spit on Plaintiff or failed to restrain the children from spitting on Plaintiff. Lawrence then congratulated the children for their conduct, even though in spitting on Plaintiff, Lawrence and the children believed they were exposing him to various diseases.

On April 3, 2001, while Plaintiff was in the lobby of the post office, Maxey and Lawrence entered the lobby and physically battered him. Maxey and Lawrence then left the post office, but Maxey remained outside, stating in a loud voice that he was going to kill Plaintiff as soon as he exited the building. Because Plaintiff knew that Maxey illegally possessed hand guns and assault rifles and had shot at people in the past, Plaintiff was afraid to leave the post office and remained there. Wilson did not arrest or charge Maxey and Lawrence for their conduct.

Plaintiff filed his amended petition in this action on May 10, 2001. He alleged that the conduct of Maxey, Lawrence, Wilson, and Tawney constituted malicious prosecution, abuse of legal process, a violation of civil rights pursuant to 42 U.S.C. Section 1983 ("Section 1983"), assault, battery, and false imprisonment. All defendants separately moved to dismiss Plaintiff's petition. The court granted their motions. This appeal follows.

---

2. The nature of the relationship among Lawrence, Maxey and the children is unclear from Plaintiff's petition.

## I. Motions to Dismiss of Lawrence and Maxey

In his first point, Plaintiff argues that the court erred in granting Lawrence's motion to dismiss Count IV of his amended petition on the ground that the complaint was frivolous and groundless because Plaintiff properly stated a cause of action for battery. Initially, we note that Lawrence's ground for dismissal does not clearly allege that Plaintiff failed to state a cause of action.[3] However, because Lawrence is a pro se litigant, we will hold her to a less rigorous standard and treat this ground as an allegation that Plaintiff failed to state a claim upon which relief can be granted. *Cf. Moore v. Swisher Mower & Machine Co., Inc.,* 49 S.W.3d 731, 736–37 (Mo.App.2001) (addressing pro se appellant's point relied on despite technical deficiency and general rule that pro se litigants must adhere to the same procedural requirements as lawyers because court was able to ascertain the issues and the arguments); *Kennedy v. Missouri Attorney General,* 922 S.W.2d 68, 70 (Mo.App. 1996) (stating that in comparison to attorney prepared pleadings, a pro se petition is held to a less rigorous standard).

■ When reviewing a dismissal for failure to state a claim, we must determine whether the facts pleaded and reasonable inferences to be drawn from the allegations, as viewed in the light most favorable to the plaintiff, demonstrate any basis for relief. *Watley v. Missouri Board of Probation and Parole,* 863 S.W.2d 337, 338 (Mo.App.1992). A pro se petition is held to a less rigorous standard and is subject to dismissal if it is patently and irreparably frivolous or malicious on its face so that, as pleaded, the plaintiff could prove no set of facts entitling him to relief. *Id.* "[I]n determining whether a *pro se* petition states a cause of action, the petition must be viewed favorably to the pleader, given the benefit of every reasonable intendment, and indulged with liberality." *Id.* The petition must state allegations of fact in support of each essential element of the cause pleaded. *Kennedy,* 922 S.W.2d at 70. If the petition consists of only conclusions and does not contain ultimate facts or any allegations from which to infer those facts, a motion to dismiss is properly granted. *Id.*

■ Liberally construing Plaintiff's petition, it appears Plaintiff is claiming that Lawrence is liable for the children's tortious acts of spitting on Plaintiff. In addition to other situations not relevant to this case, a parent may be held liable for the acts of her children:

> ... where the parent's negligence consists entirely of [her] failure reasonably to restrain the child from vicious conduct imperilling [sic] others, when the parent has knowledge of the child's propensity towards such conduct; and ... where the parent participates in the child's tortious conduct by consenting to it or by ratifying it later and accepting the fruits.

*National Dairy Products Corp. v. Freschi,* 393 S.W.2d 48, 54 (Mo.App.1965). As to tortious conduct, a battery consists of intended, offensive, bodily contact with another. *Geiger v. Bowersox,* 974 S.W.2d 513, 516 (Mo.App.1998). Intentional spitting is considered offensive physical contact. *See* Restatement (Second) of Torts, Section 19 (1965) (providing spitting in the face as an example of offensive contact);

---

**3.** Lawrence's ground states the following, in pertinent part:

1. That the original claim which relating an alleged spitting incident ... is frivolous and groundless on its face, in that it is physically impossible for the event to have occurred in the manner alleged by the plaintiff.

*cf. State v. Mack,* 12 S.W.3d 349, 354 (Mo.App.2000) (finding that an inmate's act of spitting on a guard constitutes offensive or provocative physical contact in violation of Section 565.070 RSMo 2000).[4]

■ In his petition, Plaintiff initially alleges that on the day of the incident, Lawrence agreed to and had custody, control, and/or supervision over the children.[5] Acceptance of the custody and control of a minor child creates a relationship sufficient to support a duty of care. *A.R.H. v. W.H.S.,* 876 S.W.2d 687, 691 (Mo.App. 1994). He further alleges that Lawrence knowingly and deliberately directed the children to spit on Plaintiff. In the alternative, Plaintiff alleges that Lawrence negligently allowed the children to engage in the misconduct even though she knew that the children had a propensity to engage in this conduct but that she failed to restrain them.

To support his allegations, Plaintiff alleges that while Lawrence was with the children, the children called his name, he looked up, and the children spat on him. Afterwards, he heard Lawrence laugh and congratulate the children for their conduct. We find that Plaintiff's allegations of liability based on the theory of Lawrence's failure to restrain the children despite knowledge of their propensity towards tortious conduct are merely conclusory statements.[6] However, Plaintiff has sufficiently stated a cause of action based on a ratification theory. Therefore, Plaintiff's first point is granted.

■ In his second point, Plaintiff contends that the trial court erred in sustaining Lawrence's and Maxey's separate motions to dismiss on the ground "[t]hat this Court is an inappropriate venue for all alleged Constitutional liability under Title 42 U.S.C. Section 1983." Where a court lacks subject matter jurisdiction of a cause of action, it can take no action other than to dismiss the petition. *Johnson v. Director of Revenue,* 879 S.W.2d 754, 755 (Mo.App.1994). However, even though Section 1983 is a federal statute, Missouri state courts have concurrent jurisdiction. *Nitcher v. Newton County Jail,* 751 S.W.2d 800, 802–03 (Mo.App.1988) (citing *Stafford v. Muster,* 582 S.W.2d 670, 681 (Mo. banc 1979)). Therefore, because a finding of improper venue at most would require the court to transfer the case to a court with proper venue, *see e.g. Abney v. Niswonger,* 823 S.W.2d 31, 33 (Mo.App. 1991), Lawrence and Maxey's ground is not a valid ground for dismissal. Plaintiff's second point is granted.

■ Plaintiff's third and fourth points assert that the trial court erred in dismissing his petition as to Lawrence and Maxey based on the following grounds presented in both Lawrence's and Maxey's motions to dismiss:

4. Unless otherwise indicated, all statutory references are to RSMo 2000.

5. We recognize that Plaintiff alleges in a separate count that Lawrence did not have custody of the children as of September 12, 2000. However, Plaintiff is permitted "to state as many separate claims or defenses as [he] has regardless of consistency." Rule 55.10. *See also Whittom v. Alexander–Richardson Partnership,* 851 S.W.2d 504, 506–07 (Mo. banc 1993) (noting the doctrine requiring a party to elect between theories of recovery that are inconsistent, even though pled together as permitted by Rule 55.10, before submitting the case to the trier of fact).

6. Plaintiff's only allegation supporting this theory is the following:

... Lawrence knowingly and/or negligently allowed [the children] to engage in [spitting on Plaintiff] when she had personal knowledge of their propensity to engage in the same and/or similar misconduct and she failed to properly restrain and/or control them.

3. That the civil action is an abuse of process in that its primary goal is to attempt to obtain improper discovery from the victim and victim's parents for use in pending criminal cases (CV300–3F and CV300–4F).

4. That the underlying theme of Plaintiff's petition is to hinder and delay said criminal prosecution of John Duvall, brother of the Plaintiff, by requiring the family of the victim, F.N., Jr., to be engaged in the defense of frivolous allegations in current pending lawsuits.

Rule 55.27 authorizes the following defenses to be presented in a motion to dismiss:

(1) Lack of jurisdiction over the subject matter,

(2) Lack of jurisdiction over the person,

(3) That plaintiff does not have legal capacity to sue,

(4) Insufficiency of process,

(5) Insufficiency of service of process,

(6) Failure to state a claim upon which relief can be granted,

(7) Failure to join a party under Rule 52.04,

(8) That plaintiff should furnish security for costs,

(9) That there is another action pending between the same parties for the same cause in this state,

(10) That several claims have been improperly united,

(11) That the counterclaim or cross-claim is one which cannot be properly interposed in this action.

Reviewing these defenses, it is clear that Lawrence and Maxey do not rely on any ground authorized under the rule. *See Laseter v. Griffin,* 968 S.W.2d 774, 775 (Mo.App.1998). Further, even if their grounds could be construed to comply with the rule, they would require the court to consider matters outside the pleadings.

Such considerations are only appropriate where the trial court treats the motion as one for summary judgment, and allows parties reasonable opportunity to present all material pertinent to such a motion. Rule 55.27.

In this case, it is clear that the court did not treat the motion as one of summary judgment. Its judgment, hand-written and contained in the docket sheets, states that the "court sustains the Motions to Dismiss filed by [Maxey and Lawrence] with prejudice." The judgment does not recite the findings necessary to rendition of summary judgment, such as a finding that no genuine issue of fact exists or that the defendants were entitled to judgment as a matter of law. *See Molasky v. Brown,* 720 S.W.2d 412, 414–15 (Mo.App. 1986). The grounds at issue do not support the trial court's dismissal. Plaintiffs third and fourth points are granted.

## II. Motions to Dismiss of Tawney and Wilson

 In his fifth through eighth points, Plaintiff contests the trial court's dismissal of his action as to Tawney and Wilson on various grounds asserted in their motions to dismiss. The judgment granting the motions to dismiss of Tawney and Wilson does not specify whether the dismissal was with prejudice. Therefore, we must first determine our jurisdiction, *sua sponte. WEA Crestwood Plaza, L.L.C. v. Flamers Charburgers, Inc.,* 24 S.W.3d 1, 4 (Mo.App.2000). Rule 67.03 provides that an involuntary dismissal is deemed without prejudice unless the court specifies otherwise in its order of dismissal. *Id.* at 4–5; Rule 67.03. "The general rule is that a dismissal without prejudice is not a final judgment and, therefore, is not appealable." *Chromalloy American Corp. v. Elyria Foundry Co.,* 955 S.W.2d 1, 3 (Mo. banc 1997). However, an appeal

from such a dismissal can be taken where the dismissal has the practical effect of terminating the litigation in the form cast or in the plaintiff's chosen forum. *Id.* Therefore, we must decide whether the court's order of dismissal effectively terminated the causes of action against each defendant.

Tawney's first ground for dismissal is that Plaintiff's claims against him should be dismissed because he has never been personally served. Assuming dismissal was based on lack of personal jurisdiction and not the form of Plaintiff's claims, Plaintiff is not barred from refiling the petition. *Chromalloy*, 955 S.W.2d at 3; *Waltrip v. Davis*, 899 S.W.2d 147, 148 (Mo.App.1995) (dismissing appeal from court's dismissal of plaintiff's petition without prejudice for lack of personal jurisdiction because there was nothing to prevent plaintiff from refiling his petition). As a result, the court's dismissal as to Tawney does not constitute a final judgment and Plaintiff's appeal in this regard should be dismissed. However, because Tawney also argued that Plaintiff failed to state a claim against him,[7] we may still review Plaintiff's claim.

■ Unlike a dismissal for lack of personal jurisdiction, a dismissal for failure to state a cause of action effectively bars a plaintiff from refiling the action in its original form. *WEA Crestwood Plaza*, 24 S.W.3d at 5. Because such a dismissal would have the practical effect of terminating Plaintiff's action against Tawney, we have jurisdiction to hear his appeal. *Id.* Plaintiff's first claim against Tawney is that Tawney violated Section 1983 when he refused to serve and prevented others from serving a deposition subpoena on Lawrence in an unrelated lawsuit.

■■ To establish a claim for relief under Section 1983, the petition must allege conduct by a defendant acting under color of state law who subjects the plaintiff to a deprivation of rights, privileges, or immunities secured by the United States Constitution. *Bishop v. Circuit Court of Cole County*, 702 S.W.2d 554, 556 (Mo.App. 1985). Reviewing his allegations, we find that Plaintiff adequately alleges that Tawney was acting under color of state law in his office as sheriff of Monroe County. In addition, Plaintiff's allegation that Tawney failed to serve a subpoena and prevented others from serving a subpoena to obtain deposition testimony from Lawrence is sufficient to satisfy the pleading requirements for a Section 1983 claim.

■ The Fourteenth Amendment guarantees due process of law, which includes "the opportunity to be heard ... at a meaningful time and in a meaningful manner." *Goldberg v. Kelly*, 397 U.S. 254, 267, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). Although "[d]ue process is flexible and calls for such procedural protections as the particular action demands," *Gilbert v. Homar*, 520 U.S. 924, 930, 117 S.Ct. 1807, 138 L.Ed.2d 120 (1997), Missouri grants civil litigants a right to subpoena witnesses for the purpose of taking a deposition after commencement of an action. Rules 57.03(a) and 57.09. Rule 57.09(d) authorizes subpoenas to be served by the sheriff or any other person who is not a party and who is not less than eighteen years of age. Because Plaintiff is not only alleging that Tawney would not serve the subpoena, but also that Tawney prevented others from doing so, Plaintiff adequately states a claim that Tawney deprived him of his due process right to subpoena witnesses. *Cf.*

---

7. Although Tawney did not specifically include this ground in his motion to dismiss, we note that Tawney incorporated Wilson's motion to dismiss, which contained an allegation that Plaintiff failed to state a cause of action, into his own motion.

*Long v. School District of University City,* 777 S.W.2d 944, 948 (Mo.App.1989) (holding that the school district violated due process when it failed to provide a teacher the opportunity to subpoena witnesses or documents).[8]

 Plaintiff's second and final claim against Tawney is that Tawney is liable for assault, battery, and false imprisonment as a result of Lawrence and Maxey's conduct toward Plaintiff. A third party may be liable for the conduct of another if an agency relationship exists and the following elements are present: (1) the principal must consent, expressly or impliedly, to the agent's acting on the principal's behalf; and (2) the agent must be subject to the principal's control. *Ritter v. BJC Barnes Jewish Christian Health Systems,* 987 S.W.2d 377, 385 (Mo.App.1999). Plaintiff's only allegation against Tawney is that Tawney provided "carte blanche immunity" to Lawrence and Maxey, which "encouraged and caused [them] to assault, batter and falsely imprison [Plaintiff]." Such an allegation does not indicate that Lawrence and Maxey were acting on Tawney's behalf, or that Tawney had any control over their conduct. The trial court properly dismissed Plaintiff's claim against Tawney for third party liability.

 In his motion to dismiss, Wilson similarly argued that Plaintiff failed to state a cause of action against him. In his first and second counts, Plaintiff alleges that Wilson is liable for malicious prosecution, abuse of legal process and violations of Section 1983. Beginning with his first claim, the elements of a claim for malicious prosecution are the following:

(1) the commencement of a prosecution against the plaintiff; (2) instigated by the defendant; (3) termination in favor of the plaintiff; (4) want of probable cause for the prosecution; (5) defendant's conduct was actuated by malice, and; (6) plaintiff was damaged.

*Zahorsky v. Barr, Glynn, and Morris, P.C.,* 693 S.W.2d 839, 842 (Mo.App.1985) (*overruled on other grounds by Ritterbusch v. Holt,* 789 S.W.2d 491, 493 (Mo. banc 1990)).

 Initially, we note that Plaintiff does not allege that Wilson personally initiated the actions against Plaintiff or that he represented Lawrence or Maxey in doing so. However, even if we construe Wilson's conduct in instructing Lawrence and Maxey to obtain the ex parte orders as representation, Plaintiff still fails to state a claim against Wilson. Plaintiff does not allege or attempt to show that the dismissal reflected a concession by Wilson that the suit lacked merit or that Wilson had any influence over Lawrence's and Maxey's decision to abandon their claims. *See id.* Plaintiff's claim of malicious prosecution against Wilson was properly dismissed.

 To successfully plead abuse of process, Plaintiff must set forth ultimate facts establishing the following elements: (1) the defendant made an illegal, improper, perverted use of process, a use neither warranted nor authorized by the process; (2) the defendant had an improper purpose in exercising such illegal, perverted, or

---

**8.** Tawney's other assertion that Plaintiff's Section 1983 claim should be dismissed because Lawrence voluntarily dismissed the underlying cause of action is incorrect. In his motion to dismiss, Tawney describes the underlying cause of action as Case No. CV600–81DR, while Plaintiff alleges in his petition that Taw-

ney refused to serve a subpoena in Case No. CV3–00–238CC. Because the case to which Plaintiff refers is not the case voluntarily dismissed by Lawrence, Tawney's ground does not support dismissal of Plaintiff's Section 1983 claim.

improper use of process, and (3) damages resulted. *Ritterbusch*, 789 S.W.2d at 493. Significantly, if the action is confined to its regular and legitimate function in relation to the cause of action at issue, there is no abuse even if the plaintiff had an ulterior motive in bringing the action, or if he knowingly brought the suit upon an unlawful claim. *R. Rowland & Co., Inc. v. Smith*, 698 S.W.2d 48, 51 (Mo.App.1985). Rather, the test employed is whether the process has been used to accomplish some unlawful end or to compel the opposite party to do some collateral thing which he could not be compelled to do legally. *Id.* at 52. In other words, "no abuse of process occurs in the bringing of a lawsuit if the suit is confined to its regular and legitimate function of pursuing the cause of action pleaded in the petition; it is where the suit is brought for a collateral purpose that there is abuse of process." *Id.*

■ Plaintiff fails to state a cause of action against Wilson for abuse of process. His only allegation of wrongful conduct is that Wilson instructed Lawrence and Maxey to file an ex parte order of protection against him "even though he had personal knowledge that [Lawrence and Maxey] no longer had custody of [the children]" in order to retaliate against Plaintiff. Such an allegation can at best be considered an ulterior motive in bringing the action. Plaintiff does not allege any facts to support a collateral purpose for initiating the proceedings, but merely states allegations which demonstrate that the lawsuit was confined to its regular and legitimate function of obtaining an ex parte order of protection. The trial court properly dismissed Plaintiff's claims against Wilson for abuse of process.

Turning to his Section 1983 claim, Plaintiff bases his allegation of liability on Wilson's deliberate use of malicious abuse of process in retaliation against Plaintiff for his civil rights claim against Wilson. Because we have already established that Plaintiff has not stated a cause of action against Wilson for malicious prosecution or abuse of process, we need not consider whether Wilson violated Section 1983.

■ Plaintiff's next claim is that Wilson is liable for battery as a result of Lawrence's approval of the children's conduct toward Plaintiff. Not only does Plaintiff fail to allege any facts which would indicate that Lawrence had an agency relationship with Wilson, he alleges no facts to support a claim that Wilson consented to and controlled her actions. Plaintiff merely alleges the conclusory statement that Wilson gave Lawrence "de facto carte blanche immunity to any crimes committed in Monroe County, Missouri," which "encouraged [Lawrence's] battery on the Plaintiff." Such an allegation does not give rise to a claim of vicarious liability.

■ Plaintiff's final claim is that Wilson is liable for assault, battery, and false imprisonment as a result of Lawrence and Maxey's conduct. Again, Plaintiff does not allege any facts establishing vicarious liability. His only reference to Wilson states "[t]he carte blanche immunity provided to [Lawrence and Maxey] encouraged and caused [Maxey] to assault, batter and falsely imprison the Plaintiff." The trial court did not err in dismissing Plaintiff's petition for failing to state claims against Wilson.

The judgment is affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion.

SULLIVAN, P.J., CRAHAN, J. and MOONEY, J., *concurring*.